O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MIREYA PARRA, | Case No. CV 08-3173-MLG |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

    Plaintiff Mireya Parra ("Plaintiff") seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB").  For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is reversed and the matter is remanded for further proceedings.

**I.   Background**

    Plaintiff was born on March 28, 1950. (Administrative Record ("AR") at 55.)  She is a high school graduate, with additional training in cosmetology. (AR at 14.)   Plaintiff was employed as a traffic coordinator/import-export manager for an aerospace company from 1979 to

1999. (AR at 62.)  Plaintiff filed an application for DIB on November 16, 2005, alleging that she has been disabled since April 16, 1999, as a result of depression, high blood pressure, migraine headaches, inability to concentrate, and carpal tunnel syndrome. (AR at 55, 69.)

Plaintiff's application was denied initially on the basis of insufficient evidence. (AR at 29, 251.)  On April 25, 2006, the Administration affirmed its earlier decision that there was insufficient evidence to establish disability before December 31, 2004. (AR at 31-35.)  An administrative hearing was started on November 7, 2006 before ALJ Lawrence D. Wheeler, but was continued to April 12, 2007. (AR at 343-364, 365-388.)  Plaintiff was represented by attorney Jerry Persky at both hearings. (Id.)  Plaintiff testified at both hearings (AR at 345-362, 367-376), and Plaintiff's husband, Danilo Parra, testified at the second hearing. (AR at 376-384.)

On August 8, 2007, ALJ Wheeler issued a decision denying Plaintiff's application for benefits. (AR at 11-22.)  The ALJ found that Plaintiff had not engaged in substantial gainful activity during the period at issue. (AR at 15.)  The ALJ further found that, pursuant to 20 C.F.R. 416.920(c), the medical evidence established that Plaintiff suffered from the following severe impairments: cervical spine pain, headaches and carpal tunnel syndrome. (Id.)  However, the ALJ concluded that Plaintiff's impairments did not meet, or were not medically equal to, one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Id.)  The ALJ also determined that the allegations made by Plaintiff and her husband regarding the degree of Plaintiff's functional limitations and excessive pain were not credible. (AR at 15, 17.)  The ALJ found that Plaintiff "was capable of lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, sitting essentially

unrestricted and standing and/or walking essentially unrestricted." (AR at 15.)  The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to do the full range of light work. (Id.)

The ALJ further determined that Plaintiff was able to perform her past relevant work experience as a traffic coordinator/import-export manager. (AR at 21.)  The ALJ also found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Id.)  Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920(f).

On March 21, 2008, the Appeals Council denied review (AR at 5-7) and Plaintiff timely commenced this action for judicial review.  On January 21, 2009, the parties filed a Joint Stipulation ("Joint Stp.") of disputed facts and issues.  Plaintiff contends that the ALJ erred by: (1) failing to properly evaluate the impact of Plaintiff's carpal tunnel syndrome on her RFC; (2) finding that Plaintiff's headaches did not prevent her from working prior to her date last insured; (3) finding that Plaintiff's mental impairment was not severe; and (4) failing to properly evaluate and weigh the testimony of Plaintiff and her husband and make proper credibility findings. (Joint Stp. at 3.)  Plaintiff seeks remand for a new administrative hearing. (Joint Stp. at 24.)  The Commissioner requests that the ALJ's decision be affirmed. (Id.)

**II. <u>Standard of Review</u>**

The Court must uphold the Social Security Administration's disability determination unless it is not supported by substantial evidence or is based on legal error. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)(citing *Stout v. Comm'r of Soc. Sec.*

*Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means more than a scintilla, but less than a preponderance; it is evidence that a reasonable person might accept as adequate to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

### III. Discussion

#### A. The ALJ Properly Considered the Effect of Plaintiff's Carpal Tunnel Syndrome on Her RFC

Plaintiff contends that the ALJ's determination that her carpal tunnel syndrome was not functionally limiting was not supported by substantial evidence. (Joint Stp. at 5.) In his determination of Plaintiff's RFC, the ALJ concluded that Plaintiff was able to lift no more than 20 pounds occasionally and 10 pounds frequently. The ALJ found no other work limitations and found that Plaintiff could perform the full range of light work.[1] (AR at 15.) While the ALJ found that Plaintiff's carpal tunnel syndrome was a "severe impairment," the ALJ determined that it only limited Plaintiff in the amount of weight she

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds". 20 C.F.R. § 416.967(b).

could lift. (Id.)  For the reasons discussed below, the Court finds that substantial evidence supported the ALJ's determination of Plaintiff's RFC, as well as the ALJ's conclusion that Plaintiff's carpal tunnel syndrome did not significantly limit her work capabilities.

A claimant's RFC is what she is capable of doing despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1); *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996).[2]  An RFC assessment is ultimately an administrative finding reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2).  However, an RFC determination is based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. *Id.*

Substantial evidence supported the ALJ's finding that Plaintiff's carpal tunnel syndrome did not prevent her from retaining the RFC to do the full range of light work.  First, the ALJ concluded that, if Plaintiff's carpal tunnel syndrome had been as debilitating as Plaintiff claimed, she would have undergone the local steroid injections and/or surgery recommended by Dr. Faisal, her neurologist. (AR at 16.)  Dr. Faisal reported that Plaintiff repeatedly declined surgery and local

---

[2] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy .... Although SSRs are not published in the federal register and do not have the force of law, [the Ninth Circuit] nevertheless give[s] deference to the Secretary's interpretation of its regulations." *Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir. 1991) (en banc).

5

steroid injections.[3] (AR at 18, 194, 199, 200, 201.) *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (finding that claimant's allegations of persistent, severe pain and discomfort belied by "minimal conservative treatment"). Instead, Plaintiff chose to use hand splints and take Mobic. In fact, as the ALJ noted, "As the claimant continues to follow these conservative measures some three years later, it is reasonable to conclude that they are providing her with adequate relief of symptoms." (AR at 16.) *See Flaten v. Secretary*, 44 F.3d 1456, 1464 (9th Cir. 1995) (ALJ permitted to draw rational inferences from treatment history).

Second, the ALJ noted that, once Plaintiff began using splints 24 hours per day and taking Mobic, the medical evidence indicated that Plaintiff's carpal tunnel syndrome improved and did not appear to limit her capabilities. (AR at 18-19.) The ALJ specifically determined that a review of Plaintiff's treatment records with Dr. Faisal from April 2002 through December 2004 showed a general and consistent improvement in the symptoms related to Plaintiff's carpal tunnel syndrome. During

---

[3] Plaintiff argues that the reason that she did not have surgery for her carpal tunnel syndrome was that she was upset about an unrelated surgery over 30 years prior. (Joint Stp. at 5.) In support of this claim, Plaintiff cites to a September 28, 2005 letter from Dr. Faisal to Plaintiff's gynecologist, Dr. Poladian, which states that Plaintiff was "tearful and appeared extremely angry in talking about a surgical procedure that failed about 33 years ago." (AR at 269.) However, this comment by Dr. Faisal was made in the context of his referring Plaintiff to see a psychiatrist. It does not appear to be related to Plaintiff's refusal to have surgery for her carpal tunnel syndrome. Plaintiff also points out that she brought up her prior surgery at the administrative hearing. (AR at 361.) However, this reference was made only in response to the ALJ's question as to what preventive measures Plaintiff takes to avoid going to the emergency room for her migraine headaches, not as a reason why she refused surgery for her carpal tunnel syndrom. Finally, even if this past surgery might explain why Plaintiff refused to have surgery for her carpal tunnel syndrome, it does not explain her refusal to have steroid injections.

this time, Plaintiff consistently reported that her hands were better, there was less numbness and she was sleeping better. (AR at 18, 187, 198, 199, 200.)  In fact, on December 14, 2004, during her last visit with Dr. Faisal before the expiration of her insured status, Plaintiff reported that her hands were better with the splints and that she could grip better. (AR at 18, 187.)

Third, the ALJ noted that, although Plaintiff complained of some numbness and pain, an October 2004 exam showed only "mild atrophy" and some minimal weakness, with Plaintiff again declining injections and/or surgery. (AR at 18, 188.)

The fact that Plaintiff consistently declined surgery and local steroid injections, there was overall improvement of her hands, and the abnormalities found in examinations were generally mild all provide substantial evidence for the ALJ's determination of Plaintiff's RFC. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (finding that ALJ's determination of a claimant's RFC should be affirmed where supported by substantial evidence).  Accordingly, the Court finds that this issue is without merit.

**B.   The ALJ Properly Determined that Plaintiff's Headaches Did Not Prevent Her From Working Prior to Her Date Last Insured**

Plaintiff contends that the ALJ improperly determined that Plaintiff's migraine headaches did not prevent her from working prior to her date last insured of December 31, 2004. (Joint Stp. at 9.) Plaintiff argues that, because the ALJ found that Plaintiff's migraine headaches constituted a severe impairment, he was required to consider how they limited her RFC. (Id.)  The Court finds that substantial evidence supported the ALJ's determination that Plaintiff's migraine headaches did not prevent her from working during the covered period.

7

In finding that Plaintiff's migraine headaches had improved, the ALJ stated as follows:

> The ALJ recognizes that the claimant had recurrent emergency room treatment for headaches at least by the mid 1990's. This history did not stop her from working. It clearly follows from this that with the absence of emergency intervention and other acknowledgments of decreased severity and frequency after the alleged onset date, the headaches did not prevent the claimant from working in the period through December 31, 2004. (AR at 18.)

It was reasonable for the ALJ to conclude that, although Plaintiff had severe migraine headaches in the past, she was successfully being treated so that the frequency, intensity, and limiting effect of her headaches was not disabling. *See Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits."); *see also Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (holding where claimant's multiple impairments were controllable by medication or other forms of treatment, ALJ did not err by finding impairments did not significantly limit claimant's exertional capabilities).

Over the course of her treatment with Dr. Faisal from January 2002 through December 2004, Plaintiff experienced an overall improvement in her migraine headaches. When she first began seeing Dr. Faisal, Plaintiff estimated that her migraine headaches occurred on average once every one to four weeks. Each migraine headache lasted about two days. The pain caused by Plaintiff's headaches was a five or six on a scale of one to ten, and about two times per year, her pain was so severe that

she began vomiting and had to visit the emergency room for injectable analgesics. (AR at 210-212.)  In January 2002, Dr. Faisal noted that use of Elavil and Esgic Plus helped reduce the severity and frequency of Plaintiff's headaches.  Dr. Faisal also prescribed Nortriptyline and Midrin. (AR at 210-212.)

By April 2002, Plaintiff reported that the headaches were much better (AR at 203), and in August 2002, Plaintiff told Dr. Faisal that the headaches were less severe and only occurred twice a month. (AR at 201.)  In 2002, Plaintiff also reported that her headaches were much better, less frequent and much less severe. (AR at 18, 200, 201, 203, 206.)  In October 2004, two months prior to the date last insured, Plaintiff "reported to Dr. Faisal that her headaches had significantly improved to the point that she was not needing emergency room treatment." (AR at 16, 270, 273.)  Further, Dr. Faisal assessed the migraine headaches as "well controlled at this time." (AR at 270.)  At the administrative hearing, Plaintiff testified that her headaches were better controlled because she no longer needed as frequent hospital treatment. (AR at 349.)  Based upon this medical evidence and Plaintiff's testimony, the ALJ concluded that Plaintiff "had good control of her symptoms during the crucial period.  Her headaches were less severe and repeatedly estimated as only two a month and without need for emergency room treatment." (AR at 18.)

Furthermore, the ALJ noted that Plaintiff testified that her headaches began about five to six years before she stopped working, but she acknowledged that "this did not result in her working fewer hours, changing her job duties or making any job-related changes such as in attendance, help needed or in employers." (AR at 16, 70.)  Plaintiff's emergency room records from 1995 through 2000 do not show any request

for work accommodations due to her migraine headaches. (AR at 285-306.) Accordingly, the ALJ's determination that Plaintiff's migraine headaches did not prevent her from working prior to her date last insured was supported by substantial evidence.

### C. The ALJ Erred in Finding that Plaintiff's Mental Impairment Was Not Severe

Plaintiff contends that the ALJ erred in determining that her depression was not severe. In his discussion of Plaintiff's mental impairment, the ALJ indicated there was an absence of evidence concerning her subjective complaints of depression and she had not been referred to a mental health specialist during the period before her date last insured. Therefore, the ALJ stated that he was not convinced that there was a medically determinable mental impairment. However, the ALJ noted that, even if the evidence sufficiently established a mental impairment prior to Plaintiff's date last insured, he would find that her mental impairment was not severe. (AR at 19-20.) For the reasons discussed below, the Court agrees with Plaintiff that remand is warranted based on the ALJ's erroneous finding that her mental impairment was non-severe because that decision is not supported by substantial evidence.

The existence of a severe impairment is demonstrated when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1521(a), 416.921(a). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, carrying; capacities for seeing, hearing and speaking; understanding and

remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. § 404.1521(b). The inquiry at this stage is "a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). An impairment is not severe only if it is a slight abnormality with "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

Here, Plaintiff has offered sufficient evidence to demonstrate that her mental impairment has more than a minimal effect on her ability to perform work-related functions. Although Plaintiff did not begin mental health treatment until 2005, the evidence shows an onset of her depression prior to the date last insured of December 31, 2004. For example, in January 2002, Dr. Faisal, a psychiatrist and neurologist, noted that Plaintiff had a history of depression and had been taking Elavil for two years. He agreed she was depressed and changed her medication to Celexa. (AR at 210-212.) Dr. Faisal's subsequent treatment notes show that Plaintiff's dosage of Celexa was increased. (AR at 203, 204.) Also, Plaintiff testified at the administrative hearing that, prior to 2004, she had been prescribed Elavil for stress or depression. (AR at 357.) Plaintiff's husband also testified that Plaintiff's depression began in 1999 when her employer moved out of state and terminated her employment. (AR at 378.) Plaintiff's husband further testified that she was depressed because of her migraines and inability to sleep. (Id.) This evidence indicates a level of impairment that meets the "de minimis" requirement at this stage of the inquiry. *Smolen*, 80 F.3d at 1290.

Moreover, the fact that Plaintiff did not seek mental health

treatment until 2005 from Dr. Adib Bitar, her psychiatrist, or Nina Pinho, her therapist, does not, without more, establish that Plaintiff's depression was non-severe. The Ninth Circuit has recognized that depression is "one of the most under-reported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). Thus, the fact that Plaintiff "may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [the consulting and examining physicians'] assessment of claimant's condition is inaccurate." *Id*.

Given the minimal threshold required to show that an impairment is severe, the ALJ's determination that Plaintiff's mental impairment is not severe was not supported by substantial evidence. Accordingly, the ALJ's failure to find Plaintiff's mental impairment severe warrants remand for further assessment of Plaintiff's mental impairment in the sequential evaluation process. 20 C.F.R. 404.1520.

**D.  The ALJ Properly Considered the Testimony of Plaintiff and Her Husband and Found That It Was Not Fully Credible**

Plaintiff contends that the ALJ improperly rejected her testimony and the lay witness testimony offered by Plaintiff's husband as not being credible. (Joint Stp. at 19-21.) For the reasons discussed below, the Court finds that the ALJ properly rejected the testimony of Plaintiff and her husband as not being fully credible.

**1.  Plaintiff's Credibility**

When deciding whether to accept the testimony of a claimant, the ALJ must perform a two-step analysis. At the first step, the claimant must produce objective medical evidence of one or more impairments, and

12

show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (citing *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)). The claimant is not required to produce objective medical evidence of the symptom itself or the severity of the symptom. *Id.* at 1282 (citing *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991) (en banc)). At the second step of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of his symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings giving clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. *Id*. at 1284 (citing *Dodrill*, 12 F.3d at 918).

The ALJ gave multiple reasons for finding that Plaintiff's subjective testimony was not entirely credible, all of which are fully supported by the record. First, the ALJ noted that Plaintiff's "alleged onset date directly links to the closing of the company where she was working." (AR at 16.) Plaintiff's last permanent job ended on April 16, 1999, which is the same date on which she claimed to have become disabled. (AR at 55.) Plaintiff attempted to claim that she stopped working due to medical reasons. When asked by the ALJ why she left the company she had worked at for 20 years, Plaintiff replied that "[t]he stress was just unbearable" and that her headaches were "really bad." (AR at 349-350.) Only when specifically questioned by the ALJ did Plaintiff admit that she actually stopped working when the company closed the facility at which she worked. (AR at 350.) Plaintiff's husband acknowledged this fact as well. (AR at 378.) *See Bruton v. Massanari*, 268 F.3d 824, 826 (9th Cir. 2001) (holding that ALJ properly

considered fact that Plaintiff stopped working because she was laid off, not because of a medical disability).

Second, Plaintiff testified that she applied for, and collected, unemployment insurance benefits for three months. In doing so, she certified that she was ready, willing, and able to work. (AR at 16, 351, 353.) Plaintiff also sent out many resumes and went on the few interviews she obtained. (AR 354, 379.) When the ALJ directly confronted Plaintiff with the contradiction between notifying the unemployment agency that she could work and now claiming that she was disabled, Plaintiff admitted that she lied to obtain unemployment benefits. (AR at 353.)

Third, the ALJ found that Plaintiff's hearing testimony contradicted the medical evidence. For example, Plaintiff initially testified that her headaches did not improve in 2004 until the ALJ brought to her attention Dr. Faisal's report that her headaches were "well-controlled." (AR at 16, 348-349.) Plaintiff was forced to admit that Dr. Faisal had been able to control her migraines with medication and that her condition improved. (AR at 349.) While Plaintiff later testified that on her date last insured of December 31, 2004, she still had frequent and lengthy migraine headaches, this was contradicted by the medical evidence and Plaintiff's own contemporaneous reports. (AR at 16, 188, 270, 273, 359-360.)

The Court finds that the ALJ made specific findings giving clear and convincing reasons for his rejection of Plaintiff's subjective testimony. *Smolen*, 80 F.3d at 1284. The Court further finds that it was reasonable for the ALJ to rely on all of the reasons stated above, each of which is fully supported by the record, in rejecting Plaintiff's subjective testimony. *See, e.g., Verduzco v. Apfel*, 188 F.3d 1087, 1090

(9th Cir. 1999) (claimant properly discredited where his hearing testimony was "inconsistent with his own statements or actions, as well as with the medical evidence"); *Meanel v. Apfel*, 172 F.3d 1111, 1113-1114 (9th Cir. 1999) (upholding credibility analysis where claimant received "minimal, conservative treatment," despite claims of significant pain); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (in weighing claimant's credibility, the ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains"). In sum, the Court finds that the ALJ reasonably and properly discredited Plaintiff's subjective testimony regarding the severity of her symptoms as not being wholly credible.

### 2. Plaintiff's Husband's Credibility

A lay witness can provide testimony about Plaintiff's symptoms and limitations. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). Appropriate reasons include testimony unsupported by the medical record or other evidence and inconsistent testimony. *Lewis*, 236 F.3d at 512.

Plaintiff contends that the ALJ failed to discuss and weigh the testimony of Plaintiff's husband, Danilo Parra. (Joint Stp. at 20.) Plaintiff asserts that her husband's testimony is important because it "supports her allegation that she suffered from a combination of severe

impairments, particularly depression, which turned her into a loner." (Id.)  Plaintiff contends that "[t]he only reference to her husband's testimony was that plaintiff was not under mental health treatment until 2005 (AR at 17)." (Id.)

The Court finds that the ALJ properly considered the evidence from Plaintiff's husband.  For example, the ALJ referenced Plaintiff's husband's testimony in determining that the reason Plaintiff was seeking disability benefits was because she had been laid off from her job:

> Based on his testimony, Mr. Parra helped her send out resumes. The ALJ finds suspect the claimant's testimony that she would have rejected a job offer, but, if true, that suggests that she would have abused the unemployment system – merely seeking its benefits, but not making a legitimate effort to secure employment.  Further, Mr. Parra's testimony suggests that the claimant would have accepted employment – as he believed that she was in a state of denial (i.e., underestimating) the severity of her impairments.  In any event, it does not appear to the ALJ that the claimant sustained a motivation to work – although Mr. Parra also testified that he believed that finding a job might make her feel better. (AR at 16).

The ALJ also cited Plaintiff's husband's testimony in regard to plaintiff's claim of depression: "Mr. Parra testified that the claimant had nervousness and depression pre-dating December 31, 2004, and that her mental conditions worsened and she turned into a 'loner' after not getting hired...." (AR at 17.)

In his opinion, the ALJ stated that, in coming to his conclusion regarding Plaintiff's RFC, he had "considered the allegations by the claimant and her husband."  In interpreting the evidence and developing

the record, the ALJ is not required "to discuss every piece of evidence." *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). There also is no requirement that the ALJ address this evidence at great length. In this case, the ALJ did in fact consider and discuss the testimony by Plaintiff's husband. The medical and other evidence was generally inconsistent with his testimony and conclusions about Plaintiff's ability to work. *See Lewis*, 236 F.3d at 512. Thus, the ALJ properly considered Plaintiff's husband's testimony.

## IV. CONCLUSION

The decision whether to remand for further proceedings is within this Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003); *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003)(remanding case for reconsideration of credibility determination).

Here, the evidence shows an impairment that may be considered "severe" within the meaning of the Social Security Regulations, but which might not prevent Plaintiff from performing either her past work

or some work in the national economy. However, that is not a determination that this Court can make. The matter must be remanded to the Commissioner to determine whether Plaintiff's mental impairment impairs her ability to perform her past work or any other work in the economy.

**IV. <u>CONCLUSION</u>**

For the reasons stated above, the Court finds that the ALJ's decision that Plaintiff's psychiatric impairment was not severe is not supported by substantial evidence. Accordingly, it is **ORDERED** that this case be remanded to the Commissioner for further proceedings consistent with this opinion.

DATED: January 26, 2009

_____
Marc L. Goldman
United States Magistrate Judge